BC

RECEIVED
7/30/2026
MAM
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

1:26-cv-09136
Judge John F. Kness
Magistrate Judge Gabriel A. Fuentes
RANDOM / Cat. 2

| | |
|---|---|
| YASMEEN J. KHALIL,<br><br>Plaintiff,<br><br>v.<br><br>ABDUL AZIZ (a/k/a Anthony); UBER TECHNOLOGIES, INC.; and RASIER, LLC,<br><br>Defendants. | Case No. ______________<br><br>COMPLAINT AT LAW<br><br>JURY TRIAL DEMANDED |

**COMPLAINT AT LAW AND DEMAND FOR JURY TRIAL**

Plaintiff Yasmeen J. Khalil ("Plaintiff" or “Khalil”) complains of Defendants Abdul Aziz ("Aziz") a/k/a Anthony, Uber Technologies, Inc. ("Uber Technologies"), and Rasier, LLC ("Rasier") (Uber Technologies and Rasier collectively, "Uber"), and alleges as follows:

**NATURE OF THE ACTION**

1. This action arises from a terrifying July 30, 2024 Uber ride in the Chicago area. Plaintiff requested transportation through the Uber platform from the Parkway Bank Park shopping area near Rosemont, Illinois, to her aunt’s residence in Alsip, Illinois. Instead of merely driving Khalil to her destination, the driver assigned through the platform repeatedly made unwanted comments about Plaintiff’s

appearance, aggressively demanded that she move into the front passenger seat, refused her repeated directions to continue to the destination entered in the Uber application, and deliberately diverted the vehicle from the assigned route to a highway service station against Plaintiff's will.

2. While Plaintiff was trapped in Aziz's vehicle on an interstate highway, Aziz's conduct steadily escalated. He subjected her to sexualized comments, coercive demands, and aggressive gestures; diverted from the assigned route; and attempted to end the Uber trip and its tracking. He then leaned into the rear passenger area, where Plaintiff was seated, and touched her without consent, causing her reasonably to fear an imminent physical or sexual assault. Plaintiff fled at the service station, locked herself in the women's restroom, and sought help from her family, store personnel, and law enforcement.

3. The incident has caused severe and continuing psychological and physical harm, including panic and anxiety, intrusive thoughts, nightmares, insomnia, hypervigilance, difficulty trusting others, depression, heart palpitations, headaches and migraines, muscle tension, nerve pain, and substantial medical and mental-health expenses.

4. Plaintiff seeks compensatory and punitive damages from Aziz for assault, battery, false imprisonment, and intentional infliction of emotional distress, and seeks compensatory and punitive damages from Uber on direct-negligence and

agency theories arising from Uber's selection, retention, supervision, monitoring, and control of the driver and ride.

## PARTIES

5. Plaintiff Yasmeen J. Khalil is a natural person and citizen of Texas. She resides in Harris County, Texas.

6. Defendant Abdul Aziz is a natural person who, on information and belief, was domiciled in Illinois at the time this action was filed and was authorized to provide rides through the Uber platform in Illinois.

7. Defendant Uber Technologies, Inc. is a Delaware corporation with its headquarters, principal office, and principal place of business at 1515 3rd Street, San Francisco, San Francisco County, California, 94158. The registered agent for service of process for Uber Technologies, Inc. in Illinois is C T Corporation System, located at 208 S. LaSalle St., Suite 814, Chicago, IL 60604. It designed, controlled, promoted, and operated the Uber digital platform and transportation system used for Plaintiff's ride.

8. Defendant Rasier, LLC is a Delaware limited liability company affiliated with and controlled by Uber Technologies. Rasier, LLC maintains its corporate headquarters, principal office, and principal place of business at 1515 3rd Street, San 1515 3rd Street, San Francisco, California, 94158. Its sole member is Uber Technologies, Inc., whose state of incorporation and principal place of business are

set forth in Paragraph 7 herein. Rasier, LLC may be served at its corporate headquarters, or through its registered agent C T Corporation System, at 208 South LaSalle Street, Suite 814 Chicago, Illinois 60604.On information and belief, Rasier, LLC was the Uber entity that contracted with, authorized, onboarded, monitored, and/or dispatched Aziz and provided or arranged the transportation service at issue.

9. At all relevant times, Uber Technologies and Rasier acted jointly, through one another, and through their agents concerning the Uber platform, driver onboarding, passenger matching, ride monitoring, safety policies, passenger communications, and incident response.

## JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a). Plaintiff is a citizen of Texas. On information and belief, no Defendant is a citizen of Texas, and the matter in controversy exceeds $75,000, exclusive of interest and costs.

11. This Court has personal jurisdiction over Aziz because he provided the ride and committed the tortious conduct alleged in Illinois. This Court has personal jurisdiction over Uber because Uber transacts substantial business in Illinois and the claims arise from an Uber ride arranged, provided, monitored, and completed in Illinois.

12. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to these claims occurred in this District, including the pickup near Rosemont, the route deviation, confinement, threatening and unwanted physical conduct, escape, and police response in or near Burr Ridge, Illinois.

13. The incident occurred in the Eastern Division of this District, including in Cook County and at a service-station location identified as 5803 Tri-State Tollway, Burr Ridge, Illinois 60527.

## FACTUAL ALLEGATIONS

14. On July 30, 2024, at approximately 7:45 to 8:00 p.m., Plaintiff was visiting the Chicago area and used the Uber application to request a ride from the Parkway Bank Park shopping area near 5540 Park Place and 9701 Bryn Mawr Avenue, Rosemont or Des Plaines, Illinois, to her aunt's residence at 3601 West Deer Park Drive, Alsip, Illinois.

15. Uber accepted Plaintiff's request, charged or arranged to charge her for the ride, selected and matched a driver to her request, displayed driver and vehicle information through the Uber application, and represented that the assigned driver was authorized to transport her. Before the vehicle departed, Plaintiff requested that the driver verify the Uber safety PIN associated with the ride.

16. The Uber application displayed the assigned driver's name as "Anthony," while the man driving the vehicle told Plaintiff that his name was Abdul Aziz. Plaintiff does not yet know whether Aziz was the authorized account holder, whether "Anthony" was a name associated with Aziz's approved account, or whether Aziz was using another person's account. Plaintiff possesses or has access to screenshots, recordings, and Uber records reflecting the assigned driver and ride.

17. Plaintiff did not know Aziz before the ride and reasonably relied on Uber's platform to match her with an identified, screened, authorized, and reasonably safe driver.

18. Soon after the ride began, Aziz repeatedly commented on Plaintiff's beauty, hair, and appearance in a manner that made her uncomfortable and afraid. He also asked personal questions about her ethnicity, family background, and local connections and stated that he had lived in Dubai and was from Kazakhstan.

19. Aziz repeatedly—approximately seven or more times—demanded or pressured Plaintiff to leave the rear passenger area and sit in the front passenger seat beside him. Plaintiff did not consent and repeatedly declined.

20. While driving on the freeway, Aziz aggressively and repeatedly struck or slapped his hand on the front passenger seat while insisting that Plaintiff move forward. His conduct was intimidating, coercive, and threatening.

21. Aziz announced that he needed to stop at a gas station. Plaintiff observed that the vehicle did not appear to need fuel. Aziz then said he wanted a cold drink and wanted to buy one for Plaintiff. Plaintiff refused and directed him to continue to the destination entered in the Uber application.

22. Despite Plaintiff's refusal, Aziz persisted and intentionally deviated from the assigned route. He drove Plaintiff to a 7-Eleven or service-station location at or near 5803 Tri-State Tollway, Burr Ridge, Illinois 60527.

23. Plaintiff had never been to that location. She did not request, authorize, or consent to the detour or stop.

24. During the diversion, Plaintiff was trapped in a moving vehicle on an interstate highway, under Aziz's physical control as the driver, unable to exit safely, and dependent on him to release her at a safe place. She repeatedly communicated her lack of consent to the detour and directed him to take her to the selected destination.

25. After parking at the service station, Aziz told Plaintiff to accompany him inside. Plaintiff refused. Aziz left her alone in the vehicle for several minutes, during which she began recording because she feared for her safety. Plaintiff believed the rear passenger door was locked and that she could not safely leave.

26. Aziz returned with a KitKat candy bar and repeatedly demanded that Plaintiff accept or eat it despite her refusal. He again pressured her to sit beside him,

proposed that they go elsewhere to smoke or obtain something to smoke, and asked whether she had time to “hang out.” Plaintiff repeatedly refused and reminded him that he was her Uber driver and was required to take her to the destination entered in the application.

27. When Plaintiff stated that she needed to reach her destination, Aziz asked what address she meant, even though the destination had been entered in the Uber application and transmitted to him. Aziz stated that he wanted to take Plaintiff somewhere else and gestured toward an area near a dumpster outside the service station.

28. While they remained parked, Aziz directed Plaintiff to cancel the Uber ride and manipulated his own phone as though attempting to terminate or cancel the tracked ride.

29. Aziz then turned his body toward the rear passenger area, lifted or shifted his torso between the two front seats, extended his arm toward Plaintiff’s head, and intentionally touched Plaintiff’s forehead and hair with his fingers without her consent.

30. As Aziz reached toward and touched her, Plaintiff swiftly opened the rear passenger door, fled the vehicle crying and saying “no thank you,” and ran inside the service station. Aziz called after her to return and stated that he was not going to

do anything to her. Plaintiff refused, demanded that he cancel the ride, entered the women's restroom, locked the door, and called her family for help.

31. Plaintiff's family contacted law enforcement while Plaintiff remained locked in the restroom. Responding officers, including an officer Plaintiff recalls as Officer Rallo, interviewed Plaintiff and reviewed available service-station surveillance footage. Officers observed or informed Plaintiff that Aziz's vehicle remained outside the service station for approximately thirty minutes after Plaintiff fled inside, apparently waiting for her to reemerge. Police transported Plaintiff back to the DoubleTree Hotel at 5460 North River Road, Rosemont, Illinois.

32. A police incident report was prepared. Plaintiff has identified incident number 15-24-1797, subject to confirmation through the agency's complete records.

33. On July 31, 2024, Plaintiff reported the incident to Uber's Trust and Safety team through telephone number 844-997-8237, including the route deviation, coercive and sexualized conduct, attempted cancellation of the ride, unwanted physical contact, and her flight from the vehicle. Uber did not thereafter provide the information necessary to locate the driver or Plaintiff a meaningful investigation result or substantive follow-up. Aziz's current residence and whereabout are thus presently unknown to Plaintiff and are believed to be within Uber's knowledge and/or records.

## UBER'S ROLE AND DIRECT NEGLIGENCE

34. Uber is not a passive message board. It designed and controlled the digital system that accepted Plaintiff's request, selected and presented Aziz as an authorized driver, set or calculated the route and fare, tracked the ride through GPS and application data, processed payment, established driver conduct rules, and retained authority to investigate, suspend, and remove drivers from its platform.

35. Before July 30, 2024, Uber knew from passenger reports, law-enforcement investigations, civil actions, and its own safety data that some drivers used Uber rides to isolate, harass, assault, abduct, or sexually attack passengers, particularly women traveling alone.

36. Uber also knew that material route deviations, prolonged unplanned stops, driver identity mismatches, coercive demands that a passenger move seats, attempted cancellation during an active trip, and sexualized or threatening conduct were warning signs of elevated danger.

37. Uber possessed GPS, communications, identity-verification, complaint, rating, cancellation, and account-control technologies that enabled it to detect, deter, investigate, and respond to dangerous driver conduct, including significant deviations from a passenger's selected route and unusual attempts to end a ride.

38. Illinois law required a transportation network company, before allowing a person to drive on its platform, to obtain identifying information and conduct local and national criminal-history and sex-offender-registry checks. See 625 ILCS 57/15.

39. Uber owed Plaintiff a duty to exercise reasonable care in selecting and retaining drivers; accurately identifying the driver assigned to her; designing and operating its passenger-matching and ride-monitoring system; responding to significant route deviations, prolonged unscheduled stops, attempted cancellations, and other danger signals; warning passengers of known and non-obvious risks; and investigating and acting upon prior complaints or indications of driver unfitness.

40. On information and belief, Uber breached one or more of those duties by, among other things:

a. failing to ensure that the person driving Plaintiff matched the identity displayed in the Uber application and failing to investigate or prevent unauthorized account use;

b. failing to conduct or act upon a reasonably adequate investigation of Aziz's identity, background, qualifications, complaint history, ratings, account use, and fitness to transport passengers;

c. failing to use reasonable ongoing screening and monitoring reasonably calculated to identify drivers who posed a danger to passengers;

d. failing to respond reasonably to substantial route deviations, prolonged unplanned stops, or other ride data indicating that a passenger was being taken somewhere she had not selected;

e. failing to provide or activate an effective real-time safety intervention when the ride materially deviated from its assigned route or the driver attempted to cancel or terminate the ride during an ongoing safety event;

f. failing to establish, enforce, and train drivers on effective prohibitions against sexualized conduct, coercive seat-change demands, unauthorized detours, unwanted touching, attempted termination of tracked rides, and fraternization with passengers;

g. failing to remove or suspend Aziz if Uber had received prior complaints, low ratings, identity discrepancies, account-sharing indicators, or other information showing that he was unfit;

h. failing to warn Plaintiff adequately of material, non-obvious safety limitations in Uber's screening, monitoring, cancellation, and emergency-response systems;

i. presenting Aziz to Plaintiff as an authorized and reasonably safe Uber driver without a reasonable basis for doing so; and

j. failing to conduct and communicate a meaningful investigation after Plaintiff's July 31, 2024 Trust and Safety report.

41. Uber's acts and omissions created or increased the risk that Aziz could use an Uber-arranged ride and Uber's appearance of legitimacy to isolate, confine, intimidate, touch, and attempt to assault Plaintiff.

42. The danger that an inadequately screened, identified, monitored, supervised, or retained driver would misuse an Uber ride to detour, confine, threaten, touch, or assault a female passenger was reasonably foreseeable.

43. Uber's breaches were a cause in fact and a proximate cause of Plaintiff's injuries because reasonable identity verification, selection, retention, monitoring, route-deviation and cancellation intervention, warning, and safety practices would have prevented the ride, interrupted the detour, deterred the conduct, or enabled Plaintiff to obtain assistance sooner.

## INJURIES AND DAMAGES

44. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer severe emotional distress, fear, humiliation, loss of security, loss of enjoyment of life, anxiety and panic attacks, intrusive thoughts and flashbacks, nightmares, insomnia, hypervigilance, difficulty trusting others, and depression.

45. Plaintiff has also suffered physical manifestations and injuries, including heart palpitations, headaches and migraines, muscle aches and tension, pinched-nerve or nerve-pain symptoms, and a persistent fight-or-flight response.

46. Plaintiff has received treatment from medical and mental-health providers, including therapy, psychology and psychiatry services, pain and rehabilitation care, massage therapy, physical training, and related treatment. Her questionnaire reports out-of-pocket expenses exceeding $50,000, subject to verification through records and billing statements.

47. The incident has impaired Plaintiff's work and daily functioning. She has missed work and has required assistance with household responsibilities and childcare.

48. Plaintiff's injuries are continuing. She reasonably expects future medical, psychological, therapeutic, and related expenses, as well as continuing pain, emotional distress, and impairment.

**COUNT I - CIVIL ASSAULT**
**(Against Abdul Aziz)**

49. Plaintiff incorporates the preceding paragraphs as though fully set forth here.

50. Aziz intentionally engaged in conduct that placed Plaintiff in reasonable apprehension of imminent harmful or offensive physical and/or sexual contact.

51. Aziz had the apparent present ability to carry out the threatened contact because Plaintiff was confined in his vehicle, he controlled the vehicle and route, he had transported her to an unfamiliar location against her wishes, and he physically moved into the rear passenger area and reached toward her.

52. Plaintiff's apprehension was reasonable under the totality of Aziz's escalating sexualized comments, coercive demands, aggressive gestures, unauthorized route deviation, attempted cancellation of the tracked ride, bodily movement between the front seats, reaching toward Plaintiff, and unwanted touching of her forehead and hair.

53. As a direct and proximate result, Plaintiff sustained the injuries and damages alleged above.

**COUNT II - CIVIL BATTERY**
**(Against Abdul Aziz)**

54. Plaintiff incorporates the preceding paragraphs as though fully set forth here.

55. Aziz intentionally extended his arm into the rear passenger area and made unauthorized and offensive physical contact with Plaintiff's forehead and hair.

56. Plaintiff did not consent to that contact. Under the circumstances—including Plaintiff's repeated rejection of Aziz's sexualized attention, demands that she sit beside him, proposals that she accompany him elsewhere, and route diversion—the contact was offensive to a reasonable sense of personal dignity.

57. As a direct and proximate result, Plaintiff sustained the injuries and damages alleged above.

**COUNT III - FALSE IMPRISONMENT**
**(Against Abdul Aziz)**

58. Plaintiff incorporates the preceding paragraphs as though fully set forth here.

59. Aziz knowingly and intentionally restrained Plaintiff against her will by using his control of a moving vehicle to carry her away from her chosen route and destination after she repeatedly refused the detour and directed him to take her to the destination entered in the Uber application.

60. The restraint was unreasonable and without legal authority. Plaintiff could not safely exit the vehicle while it was traveling on the interstate. At the service station she believed the rear passenger door was locked, and she escaped only after Aziz returned, escalated his conduct, and reached toward and touched her.

61. As a direct and proximate result, Plaintiff sustained the injuries and damages alleged above.

**COUNT IV - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(Against Abdul Aziz)**

62. Plaintiff incorporates the preceding paragraphs as though fully set forth here.

63. Aziz's conduct was extreme and outrageous. He abused the power and control he possessed as the driver of a vehicle carrying a lone passenger, ignored Plaintiff's repeated refusals, intentionally transported her to an unfamiliar place, attempted to end the tracked Uber ride, proposed taking her elsewhere, physically

intruded into the rear passenger area, touched her without consent, and remained outside the service station after she fled.

64. Aziz intended to cause severe emotional distress or knew there was a high probability that his conduct would do so.

65. Aziz's conduct in fact caused Plaintiff severe and continuing emotional distress and physical manifestations, as alleged above.

**COUNT V - NEGLIGENCE**
**(Against Uber Technologies, Inc. and Rasier, LLC)**

66. Plaintiff incorporates the preceding paragraphs as though fully set forth here.

67. Uber owed Plaintiff duties of reasonable care arising from its undertaking to arrange, identify, facilitate, monitor, and control material aspects of her paid transportation and from its superior knowledge and control of driver, platform, GPS, cancellation, complaint, and safety information.

68. Uber breached those duties in the respects alleged above, including failures concerning driver identity, selection, screening, retention, monitoring, route-deviation and cancellation detection and response, warnings, safety design, and incident prevention and investigation.

69. Uber's breaches were a cause in fact and a legal and proximate cause of Plaintiff's injuries and damages.

## COUNT VI - NEGLIGENT SELECTION, HIRING, RETENTION, AND SUPERVISION
## (Against Uber Technologies, Inc. and Rasier, LLC)

70. Plaintiff incorporates the preceding paragraphs as though fully set forth here.

71. Uber selected, authorized, retained, and continued to provide Aziz access to passengers through its platform and held him out as fit to provide transportation.

72. On information and belief, a reasonable investigation of Aziz's identity, application, background, driving history, complaint history, ratings, account use, and conduct would have disclosed information showing that he was unfit or required additional review, restriction, suspension, or removal. The specific facts are primarily within Defendants' possession and will be developed through discovery.

73. Uber knew or should have known of Aziz's particular unfitness to transport passengers safely and without harassment, coercion, unauthorized detours, confinement, unwanted touching, or assault, yet selected or retained him and failed reasonably to supervise or restrict his access to passengers.

74. Aziz's use of the Uber platform and assigned ride created the necessary connection between Uber's negligent selection, retention, and supervision and Plaintiff's injuries. His unfitness proximately caused the harm alleged above.

## COUNT VII - VICARIOUS LIABILITY / AGENCY (PLED IN THE ALTERNATIVE)
## (Against Uber Technologies, Inc. and Rasier, LLC)

75. Plaintiff incorporates the preceding paragraphs as though fully set forth here.

76. Uber selected Aziz, matched him to Plaintiff, furnished the route and passenger information, controlled access to the platform and payment system, imposed performance and conduct requirements, monitored the ride through digital data, and retained the right to suspend or terminate his access.

77. Aziz was acting as Uber's actual agent, apparent agent, employee, servant, and/or representative while accepting and performing Plaintiff's Uber ride. Uber represented through its application that the assigned driver was its authorized driver, and Plaintiff reasonably relied on that representation by entering and remaining in the vehicle.

78. Aziz's route deviation, refusal to deliver Plaintiff to her selected destination, attempted cancellation of the tracked ride, wrongful confinement, and unwanted physical contact occurred while he was performing the transportation transaction Uber assigned to him and from which Uber expected to earn compensation.

79. To the extent any of Aziz's tortious conduct is found to have occurred within the scope of an agency or employment relationship, or to have been enabled by apparent agency on which Plaintiff reasonably relied, Uber is vicariously liable for the resulting damages.

## PUNITIVE DAMAGES

80. Aziz's conduct was intentional, malicious, willful, and in conscious disregard of Plaintiff's rights and safety, supporting punitive damages under Illinois law.

81. Plaintiff also seeks punitive damages from Uber to the extent discovery establishes that Uber, through managerial employees or corporate policy, authorized, ratified, consciously disregarded, or recklessly failed to prevent the conduct and risks alleged, including by retaining Aziz with actual knowledge of prior dangerous conduct, failing to address identity or account-sharing warnings, or deliberately refusing reasonable safety measures despite known recurring risks.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Yasmeen J. Khalil respectfully requests that the Court enter judgment in her favor and against Defendants, jointly and severally to the extent permitted by law, and award:

A. compensatory damages for past and future physical injury, pain and suffering, emotional distress, mental anguish, loss of normal life, disability or impairment, and other non-economic loss;

B. past and future medical, psychological, therapeutic, rehabilitation, and related expenses;

C. past and future lost earnings and loss of earning capacity, if established;

D. punitive damages against Aziz and against Uber to the extent permitted by law and supported by the evidence;

E. prejudgment and post-judgment interest as allowed by law;

F. costs of suit; and

G. all other relief the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable under Federal Rule of Civil Procedure 38.

Respectfully submitted,

/s/ Yasmeen J. Khalil
Yasmeen J. Khalil
7823 Magnolia Grove Court
Humble, Texas 77346
Yasmeen_Khalil@Hotmail.com
Phone: 832 992-6592
Proceeding Pro Se